IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

JOE L. JOHNSON     PLAINTIFF

V.     CASE NO. 1:07CV168

CITY OF COLUMBUS, MISSISSIPPI
JOSEPH ST. JOHN     DEFENDANTS

### MEMORANDUM OPINION

This cause comes before the court on the motion [43] of the defendants, City of Columbus, Mississippi and Joseph St. John, seeking summary judgment.

### Facts

Plaintiff, Joe Johnson, a black male, began working as a Columbus police officer in 1974. In 1997, Johnson was promoted to assistant chief of police. In 1999, Johnson was considered for the position of police chief. He was rejected by the Columbus City Council in favor of a white male. In 2003, the city council once again hired a new chief. Johnson was considered. He was once again rejected in favor of a white male, J.D. Sanders. At that time the council included three black members and three white members. The three black members voted for Johnson. The three white members voted against Johnson. With the council equally divided, the deciding vote fell to the mayor. The white mayor voted against Johnson and for Sanders.

Following this rejection Johnson filed an Equal Employment Opportunity Commission ("EEOC") complaint and later a suit in this court asserting a claim of racial discrimination. While that case was ongoing, the police chief resigned. In October 2006, Johnson was appointed by the council to act as interim police chief.

The council began conducting a search for their next police chief at this time. In conducting the search, they appointed a committee to offer recommendations of whom to hire. The committee was made up of law enforcement personnel from other cities and community leaders. The leaders ranked each of the twenty seven applicants. Johnson was the highest ranked applicant. The city narrowed the list of candidates down to six applicants.[1] Johnson was included in the six finalists. One of those candidates was eliminated from consideration following a background check. Another candidate withdrew his name from consideration. On June 13 and 14, 2007, the city council interviewed the four remaining candidates, Johnson, Brent Winstead,[2] Joseph St. John, and Nathaniel Clark.[3] All interviews were conducted in open session and televised.

On June 18, 2007, a jury returned a verdict finding Columbus had not discriminated against Johnson in passing him over for the chief position filled in 2003. On July 2, 2007, the city council voted to hire a new police chief. The city council's racial make-up had changed since 2003. In July 2007, the council had four white members and two black members. The council first nominated Johnson for the position. The two black councilmen voted for Johnson. The four white councilmen voted against Johnson. The council next nominated Clark, the other black finalist. Once again the council's vote was split four to two with the white members voting

---

[1] The city asked the committee to narrow the group to five candidates. In doing so the committee appears to have only ranked the top five applicants. It is clear from the record the five highest ranked applicants were chosen. The court is unable to determine where the final candidate, Brent Winstead, ranked.

[2] Evidence shows Winstead was taken out of consideration because he wanted a higher salary than the city was willing to offer. However, other documents submitted show St. John was eventually offered a salary comparable to that requested by Winstead.

[3] Submitted to the court is a letter informing Clark he will not be considered for the position following his background check. However, the city council minutes submitted suggest Clark was interviewed by the city a month after the letter was drafted.

against Clark.  Finally, the council voted on St. John.  He was offered the position following another four to two vote split along racial lines.  Aggrieved by the council's decision, Johnson brought the instant action alleging discrimination based on race and retaliation for his suit related to the 2003 hiring process.

In developing these facts, the court has reviewed the documents submitted by the parties.  The court is puzzled by a number of these documents.  Defendants' exhibit E-13 is a letter purportedly written on May 23, 2007.  The letter informs Clark he will not be considered for the chief's position due to problems in his background.  As discussed in footnote three, it appears Clark was considered further.  In fact the council voted against hiring him on July 2, 2007.  More troubling, however, is the letterhead on this document.  The letterhead lists Joseph St. John as the police chief.  According to other submitted documents, St. John was not hired for approximately forty-five days after this letter purports to have been written.  On May 23, 2007, Johnson was still serving as interim police chief.  The same letterhead confusion exists as it relates to defendants' exhibit E-8.  The city was using a different letterhead for at least a portion of May.  Defendants' exhibit E-4 dated May 8, 2007 lists Johnson as the interim police chief.  According to defendants' exhibit E-15 this is a position Johnson held until July 2, 2007.  The court will keep these discrepancies in mind while deciding this motion.

## Standard of Review

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  An issue of material fact is genuine if a reasonable jury could return a verdict for the

nonmovant. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In reviewing the evidence, this Court must draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence. *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). In so doing, the Court must disregard all evidence favorable to the moving party that the jury is not required to believe. *Reeves*, 530 U.S. at 151, 120 S.Ct. at 2110.

Analysis

I. Claims Against Joseph St. John

Both defendants in this action have moved for summary judgment. The court can not find any facts to support a claim against St. John. Apparently he has been named in the suit solely because Johnson hopes the court will award him the police chief's position and such an award would affect St. John's rights. This does not constitute a cause of action. The court grants St. John's request for summary judgment as to all claims.

II. Racial Discrimination Claim

Columbus first attacks Johnson's claim that race discrimination motivated their employment decision.

Claims of racial discrimination are governed by the evidentiary standard adopted in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792 (1973). Under *McDonnell Douglas*, the plaintiff has the initial burden of making out a *prima facie* case. *Id*. at 802. Once the plaintiff has established a *prima facie* case the burden shifts to the defendant to articulate a legitimate non-discriminatory reason for the employment decision. *Id*. at 802-03. If the defendant is able to articulate a legitimate reason for its action the ultimate burden rests on the plaintiff to prove the employment decision was the result of a discriminatory practice. *Id*. at 804.

In order to make out his *prima facie* case, Johnson must show that: (1) he is a member of a protected class; (2) he sought and was qualified for the position in question; (3) he was denied that position; and, (4) a person outside his protected class and with similar qualifications was hired. *Id*. at 802.

Columbus does not dispute Johnson can make out a *prima facie* case. The burden then falls to the city to articulate a legitimate non-discriminatory reason for its decision. Columbus actually asserts three legitimate reasons: (1) Johnson was less qualified than St. John; (2) Johnson's poor performance in carrying out his duties; and, (3) Johnson was part of the long-term dysfunctional leadership of the Columbus police department.

St. John began his career as a police officer in 1984. Working exclusively in the Newport News, Virginia police department, St. John rose from patrol officer to captain. In 2006, St. John began serving as a captain working as the Major Crimes Commander. That same year he transferred within the department to become the South Precinct Commander. In 1991, St. John received an Associate's Degree in Criminal Justice. He received a Bachelor's Degree in Criminal Justice, graduating *summa cum laude*, in 2004. Both degrees are from St. Leo University. In 2003, St. John was the valedictorian of the Southern Police Institute's Administrative Officers Course.

Johnson graduated from Jackson State University with a Bachelor's Degree in Social Science Education. He completed a double minor in History and Geography. He is also a graduate of the Southeastern Command and Leadership Academy where he was awarded the Builder Award. Johnson began his career as a patrol officer with the Columbus Police Department in 1974. It appears Newport News and Columbus use different titles for their police leaders. The court deduces Johnson obtained the equivalent of the rank of captain in 1997 when

he was named Assistant Chief of the Criminal Investigation Division. Begining in 1999, Johnson served as Assistant Chief of the Patrol Division. Johnson became the Captain over Administration in 2002. He served as Interim Chief of Police from August 1, 2003 until November 30, 2003. He then became Assistant Chief of Police. He was once again appointed Interim Chief of Police in October 2006. He held that position throughout the disputed hiring process.

This court will not conduct a fresh review of every qualifications determination made by employers. *See Scott v. University of Mississippi*, 148 F.3d 493, 509 (5th Cir. 1998). Both parties fight over small details in St. John's and Johnson's background. Both parties claim their candidate is easily more qualified than the other. Employers, not courts, are in the best position to make these determinations. There is nothing in the record clearly showing Johnson to be better qualified than St. John. The court will not second guess the council's articulated reasoning.

The city's argument that Johnson performed poorly is based on three grounds that: (1) as head of the Criminal Investigation Division, Johnson failed to solve a string of highly-publicized serial murders; (2) he failed to timely pay bills during his second term as interim chief; and, (3) more than a quarter of the city's police officers left the force during Johnson's last stint as interim chief. If actually relied upon each of these underlying reasons would be sufficient to meet the city's burden of articulation

Finally, Columbus argues Johnson was too closely connected with the long-term dysfunctional leadership of the police department to be promoted to chief. In 2001, the city hired an outside consulting group, Operating Support Services, Inc. ("OSS"), to assess the police department. The need for outside consulting was a result of a crisis of public confidence in the

force because of a string of unsolved serial murders and the conviction of Police Chief Donald Freshour for embezzling department funds to finance a sexual relationship with a police informant. Completed in 2002, the OSS report found the department's existing leadership unable to bring about the changes needed to restore public trust. Instead of promoting from within, the report recommended the city conduct a nationwide search for its next chief and assistant chief positions. The city then hired the Waters Group to conduct a nationwide search for a new police chief. That search lead to the hiring of Sanders as chief in 2003.

Reliance on OSS's recommendations is clearly a non-discriminatory factor in making a hiring decision. In fact this reliance was tested in Johnson's 2005 suit. There a jury, looking at this information, found Columbus had not discriminated against Johnson.

With those reasons articulated the ultimate burden then shifts to Johnson to prove his claim of discrimination. Johnson's burden at this point is to prove his claim, not to rebut the reasons given by Columbus. *Reeves*, 530 U.S. at 142-43. Johnson's argument, however, does not have to rise to the level of proving each of the given reasons unreasonable. Instead he can show the council did not actually make their decision based on those grounds, but instead made their decision because of racially discriminatory motives.

Johnson can not point to a racially derisive comment made to or about him. However, there is circumstantial evidence race may have motivated the decision not to promote Johnson. Most discrimination cases rely on circumstantial evidence and that evidence is enough to create a jury question. *See Fierros v. Texas Dept. of Health*, 274 F.3d 187, 192 (5th Cir. 2001).

The fact the city council voted along racial lines is circumstantial evidence that race was the deciding factor in who to promote. This is strengthened by the fact the council considered two black candidates and that only the black councilmen voted for either candidate. Alone this

might not be enough to create a genuine issue of material fact. However, there is also evidence Johnson was the top choice of the committee appointed by the council, but was not hired. Johnson was the lone internal applicant. Internal applicants had always been given preference until 2003 and that 2003 decision to go outside the force had not worked well. This creates a question of whether the city was ignoring its past practices because it did not want to hire a black police chief.

The city's articulated reasons for its decision must be viewed in light of this circumstantial evidence. Those reasons must also be viewed in light of the discrepancies in the documents presented by the defendants. These discrepancies create a question about the fairness of the process as it relates to Johnson. Taking the discrepancies in the light most favorable to the plaintiff, they call into question the motives behind the city's decision.

The qualifications of Johnson and St. John are similar. In drawing a distinction between the two men, the city focuses primarily on their educational backgrounds. St. John has a degree in criminal justice. Johnson's degree is in social science education. However, the court fails to see much difference in the two candidates. Both men have worked for more than twenty years in law enforcement. It is quite reasonable to believe experience is the best teacher. Columbus' belief in this concept is evidenced by defendants' exhibit E-3. That exhibit, the notice of vacancy for police chief, making no mention of a required major course of study, states graduation from a four-year college is preferred in candidates. The same notice mandates ten years of pertinent experience including at least five years of supervisory experience. This distinction between experience and education is outlined at two different points in the document. Both men meet each of the objective criteria outlined. Based solely on their resumes, the city could have legitimately hired either candidate. Nothing however distinguishes St. John to the point that a

jury could not reject this reasoning as pretext in the face of the racial bias discussed previously.

Columbus points to three areas to show Johnson performed poorly as a police officer. The first ground is that Johnson failed to apprehend a serial killer as head of the Criminal Investigation Division. The information before the court points to no evidence that Johnson's work on the serial murders fell below police standards. Columbus points to nothing to show Johnson's actions caused the investigation to fail. Columbus also promoted Johnson after he moved from the Criminal Investigation Division. In fact, immediately following this period, Johnson quickly rose through the upper echelon of police department management. Clearly the city did not find his performance so poor he could not run a major part of their police department. It does not take an expert on criminal justice to know some crimes go unsolved. An implication that a division head who has an unsolved crime on his books can not be eligible for promotion goes too far.

The councilmen involved in making the promotion decision may have believed Johnson performed poorly. If that subjective belief motivated their decision not to promote him, then his claim would fail. There is, however, little if any evidence to show this failure to solve a series of murders was the motivating factor in deciding not to promote Johnson. It meets the city's burden of articulation, but can not absolve all questions of material fact in the face of the racial strife present in the department's hiring practices.

The loss of seventeen officers during Johnson's brief tenure is the second ground raised by the city.[4] While it may be possible this loss does not reflect poorly on Johnson, it certainly

---

[4] Relatedly, the city argues Johnson did not maintain a proper list of qualified candidates to fill those newly opened positions. However, testimony shows this duty actually fell to the civil service department.

could be reasonably interpreted as a failure of leadership.[5] The evidence presented suggests at least one councilman held the belief this was the case. An effective police force needs to be able to retain its officers. A council convinced that Johnson could not retain an effective force would be justified in not promoting him. Even if the council was wrong in its assessment that Johnson could not maintain an effective force, but reasonably relied on the incorrect belief, then Johnson's claim would fail.

Johnson, however, calls the reasonableness of this belief into question. Plaintiff's exhibit 11 shows the council was made aware seventeen officers or former officers appeared in court to testify on Johnson's behalf in his 2005 lawsuit. Johnson argues this evidences the desire of department employees to have him as their chief. While not definitive, this is some rebuttal evidence showing the council did not base its decision on Johnson's inability to maintain police personnel. Additionally this basis is only put forward by one councilman's testimony. It is unclear if other councilmen relied on this perceived problem. These two facts combined with the evidence of racial strife would allow a jury to disbelieve the council's reliance on this ground and find the council's decision was made because of race.

Columbus' final ground for their poor performance rationale is that Johnson failed to pay bills for the jail when he was the interim chief. Johnson claims he did not pay the bills because he disputed the charges. However, the city's contracts required the bills to be paid and then challenged. Johnson was made aware of this and corrected his mistake. This is Columbus' strongest ground in arguing Johnson performed poorly. However, a jury might believe a good faith mistake timely corrected did not rise to the level of denying Johnson promotion, but was

---

[5] The one councilman who mentioned this problem admitted he did not talk to any of the officers about why they left the police department.

instead pretext for racial discrimination. This appears to be a minor mistake and once again was cited by only one councilman. It is unclear the council as a whole was even aware of this problem. Again there is a question of material fact as to whether this ground is simply pretext for Columbus' decision.

Finally, Columbus argues the city decided to hire an outsider instead of Johnson because Johnson was too entrenched in the dysfunctional leadership of the police department. The court would not go so far as to hold this rationale does not meet the burden of articulation. However, the city's reliance on it is dubious. There is no doubt the city spent a lot of money to get advice about fixing their police department. There is no doubt the report commissioned by the city informed them that a change was needed at the top two positions. On its face the city's articulated rationale seems perfectly logical.

No member of the council who voted against Johnson was on the council at the time the report was commissioned or received. Nothing in the record shows the new councilmen were familiar with the report. None of the councilmen stated in their depositions that their decision was based on the recommendation to look outside the force for leadership.

Even the ex-councilmen disregarded the report as it related to Johnson. In order to implement the suggestions in the report they asked the chief to step down in 2003. Despite the report's recommendation that outside personnel were needed to fill the assistant chief's position, Johnson was given that position. In fact Johnson was made interim chief while the city searched for an outsider to become the chief. Even with the recommendation to hire an outsider as chief, Johnson became one of the two finalists for the position at that time. Further, OSS while widely criticizing the department's leadership, described Johnson as an outstanding police leader. Based on these facts a jury could easily disregard this reasoning and find it pretext for discriminatory

motives.

Because a jury could disbelieve the reasons given by Columbus for their decision and could infer the city acted with discriminatory motives, the court must deny summary judgment as to Johnson's claim of racial discrimination.

### III. Retaliatory Discharge Claim

Johnson next brings a claim alleging Columbus did not promote him in retaliation for his previous suit against the city.

Claims of retaliation brought under Title VII fall under the same *McDonnell Douglas* burden shifting framework as racial discrimination claims. In order to establish a *prima facie* case a plaintiff must prove that: (1) he engaged in a protected activity; (2) an adverse employment action occurred; and, (3) a causal link exists between the protected activity and the adverse employment action. *Washburn v. Harvey*, 504 F.3d 505, 510 (5th Cir. 2007) (citing *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996)).

Columbus does not dispute Johnson engaged in a protected activity or that an adverse employment action occurred. The only question as to Johnson's *prima facie* case is whether he can prove a causal connection. Johnson "must present either 'direct evidence of retaliation' or 'circumstantial evidence creating a rebuttable presumption of retaliation'" in order to prove causation. *Id*. (quoting *Fabela v. Socorro Indep. School Dist.*, 329 F.3d 409, 414-15 (5th Cir. 2003)).

Johnson does not point the court to any direct evidence of retaliation. Instead Johnson relies on the proximity of the adverse employment action and his suit against the city. Temporal proximity between a lawsuit and an adverse employment action can only prove causation "when the protected act and the adverse employment action are 'very close' in time." *Id*. at 511

(quoting *Clark County School Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)).[6] The time between suit and adverse action are measured from the time the suit is filed. *See id*.

Johnson's initial suit in this matter was filed on September 27, 2005. Johnson argues the adverse action took place not when the city hired St. John, but instead when it opened the position. Under Johnson's logic, he had already been considered as a candidate and should have been hired as soon as the chief position was vacant. For the purposes of this motion the court will accept that assertion as true. The previous chief resigned in October 2006. The question before the court is whether thirteen months between filing a suit and an adverse employment action is temporally close enough to establish causation.

The Supreme Court in dealing with this issue found a delay of twenty months was too long to establish causation. *Clark County School Dist.*, 532 U.S. at 274. In making this determination the Court cited cases finding a proximity of three months and four months insufficient to establish causation. *Id.* at 273-274 (citing *Richmon v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992)).[7] The Fifth Circuit implies a period of one day between a protected activity and an adverse employment decision is enough to establish a *prima facie* case. *Swanson v. General Services Admin.*, 110

---

[6] There appears to be a split between Fifth Circuit panels as to whether temporal proximity alone can ever establish causation. In *Strong v. University Healthcare System, L.L.C.*, the Fifth Circuit held "temporal proximity alone is insufficient to prove but for causation." 482 F.3d 802, 808 (5th Cir. 2007) (citing *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 43 (5th Cir. 1992). That decision was handed down in March 2007. Seven months later the court in *Washburn* considered evidence of temporal proximity without any other evidence to prove causation. 504 F.3d at 511 (holding neither a two nor three year period was sufficiently close enough to prove causation). The court does not need to reach that issue as Johnson's claim fails under either standard.

[7] In *Washburn*, the Fifth Circuit cites to this same holding. 504 F.3d at 511. The parenthetical following the court's citation states "that a three-month or four-month period may be close enough to make a *prima facie* showing of causation but holding that a twenty-month period was not." *Id.* (citing *Clark County School Dist.*, 532 U.S. at 273-74). This court may be reading the language of *Clark County School Dist.* differently than the panel in *Washburn*. However, even if a proximity in the range of three or four months would allow a plaintiff to prove causation, the time frame in this matter is not that close.

F.3d 1180, 1188 (5th Cir. 1997). Longer time periods have not been accepted by this Circuit. Certainly a period of more than a year by itself is not sufficient to establish causation. The court must therefore grant Columbus' request for summary judgment as it relates to Johnson's charge of retaliation.

## Conclusion

Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART. Johnson's claims against City of Columbus, Mississippi for racial discrimination stand. All Johnson's claims against Joseph St. John fail. Johnson's claim of retaliatory discharge likewise fails.

This the 15th day of October, 2008

**/s/ MICHAEL P. MILLS**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**